## AARON THOMAS v. THE STATE.

### No. 3159. Decided March 15, 1905.

**Murder Second Degree—Charge of Court—Manslaughter.**

Where in a prosecution for murder the evidence showed that deceased was in a difficulty or had just gotten out of one with the two brothers of defendant, in which he had. fired at them twice, which brought defendant on the scene of the trouble, apparently in defense of his brothers. Held if upon ascertaining the fact that his brothers were being shot at by deceased, defendant went to their rescue with his mind in such an inflamed condition as to render it incapable of cool reflection, or if in going to their rescue, the deceased started towards him in a threatening manner, in either event such evidence called for a charge on manslaughter.

Appeal from the District Court of Falls. Tried below before Hon. Sam R. Scott.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*N. J. Lewellen, Rice & Bartlett,* for appellant.—The court erred in omitting to charge the jury upon the law of manslaughter, because the facts demanded a charge upon this subject.

The evidence discloses that shortly before the shooting, deceased, while mad and in liquor, had snapped his pistol at one of the brothers of defendant, and had shot at another one of them; that these boys were frightened by deceased, and were running in the night time from him; that he was cursing and abusing them; and that the defendant hearing this, went immediately to the scene of the trouble to ascertain its cause; and that upon arriving there the shooting occurred, in which the deceased was killed. Defendant testified that when the pistol fired at first, he got up and looked out and he heard another shot and loud cursing; that he heard his youngest brother halloo, and that he "went on" so much that he, defendant went down, carrying his gun in his arm; that his brother hallooed "Oh Lordy, run here, Buddy," and I ran down to see what was the matter. The gun that I carried was a single barrel breach-loader. I didn't see anybody as I ran, except a man and woman standing in the road-way, who had

stopped and were listening at the boys. I didn't know them, but went on to where the people were. When I came up, I says, "What's the matter, men?" At this juncture a man in the crowd broke loose from the other men, and says, "There's another one of those damned Brazos bottom sons of bitches, I am going to kill him"; and he hallooed "look out," and fired. Just as he fired, I raised my gun and fired too. That's just the way it was. It was deceased that fired at me. I had known him for a long time. We had never had any trouble before.

The whole record shows a sudden killing, under a state of excitement, and that defendant at the time believed that his brothers were engaged in a fuss with deceased who had fired at them, and that the defendant was in such a state of excitement at the time of the shooting as that the case demanded a charge upon the subject of manslaughter.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, the punishment being fixed at confinement in the penitentiary for a term of fifteen years.

It is not necessary to discuss the application for continuance under the disposition to be made of the case. The charges on self-defense, as given by the court and supplemented by the special instructions given at the instance of appellant, we think sufficiently present that view of the case. We are of opinion, however, that a charge on manslaughter should have been given. The case made by the State shows sufficient testimony, perhaps, to justify the court in submitting the issue of murder in the second degree; but some of the testimony is to the effect that deceased was in a difficulty or had just gotten out of a difficulty with the two brothers of appellant, in which he had fired at them twice. Appellant was at his residence a short distance away, and heard the difficulty; and was sufficiently apprised of the fact that his brothers were engaged in this difficulty with deceased. He got a pistol, went to the scene of the trouble, and became engaged in an altercation with deceased. This all occupied a very few moments. As he came up, deceased made some remark to the effect: "Yes, there is another one of those God damn Brazos bottom sons of bitches. I am going to kill." He hallooed, "Look out," and fired. Just as he fired, appellant also fired. There was also testimony to the effect that while deceased did not fire at appellant he turned towards him and made the remark above imputed, and started in the direction of appellant, when appellant fired. If upon ascertaining the fact that his brothers were being shot at by deceased, he went to their rescue, with his mind in such an inflamed condition, by reason of that fact that he was incapable of cool reflection, these facts called for a charge on manslaughter. In going to the rescue of his brothers and to their assistance, thinking they were being killed, and on reaching the place where deceased was, and believing his brothers may have had their lives taken, and deceased started towards appellant in a threatening manner, this

would call for a charge on manslaughter. Without going into a detailed discussion of the testimony and the law applicable thereto, under the facts in this record, we believe that the Guffee case, 8 Texas Crim. App., 187, is directly in point; and under that authority, the charge on manslaughter should have been given under the facts. We have not undertaken here to give a detailed statement of the facts, as the record is rather voluminous. But we are of opinion that the charge on manslaughter should have been given. Because it was not, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.